ORIGINAL



LAURA E. DUFFY
United States Attorney
ANNALOU TIROL
Assistant U.S. Attorney
California State Bar No. 216578
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7611
Facsimile: (619) 557-7055
Email: AnnaLou.Tirol@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 11CR1622-JAH |
| Plaintiff, | |
| v. | **DEFERRED PROSECUTION AGREEMENT** |
| MACKENZIE AIRCRAFT PARTS, INC. | |
| Defendant. | |

The United States, by and through the United States Attorney's Office for the Southern District of California (the "United States") and defendant Mackenzie Aircraft Parts, Inc., a California corporation, ("Mackenzie"), by its undersigned representatives and attorneys, enter into this deferred prosecution agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1. MacKenzie acknowledges and agrees that the United States will file a one-count Criminal Information in the United States District Court for the Southern District of California charging Mackenzie with Fraud Involving Aircraft Parts, in violation of Title 18, United States Code, Section 38. In so doing, MacKenzie

knowingly waives: (a) ... to indictment on these charges, as well as all rights ... ly trial pursuant to the Sixth Amendment to the Uni... Constitution, Title 18, United States Code, Section ... ederal Rule of Criminal Procedure 48(b); and (b) any ... ith respect to venue. MacKenzie consents to the filin... nformation, as provided under the terms of this Agreement, ... United States District Court for the Southern Distric... ...nia.

  2.  MacKenzie a... epts, and acknowledges that it is responsible for the a... fficers, employees, subsidiaries, and agents as charg... nformation and the Statement of Facts, attached her... .bit A, which is incorporated by reference into this A... nd that the allegations described in the Information a... described in Attachment A are true and accurate. Should ... States pursue the prosecution that is deferred by this ... , MacKenzie agrees that it will neither contest the ... ty of nor contradict the facts as stated in the Inform... he Statement of Facts in any such proceeding, includin... / plea or sentencing proceeding.

### Term of the Agreement

  3.  This Agreeme... tive for a period beginning on the date on which the In... filed and ending one (1) year from that date (the "Term"...

### Relevant Considerations

  4.  The United ... s into this Agreement based on the individual facts an... nces presented by this case and MacKenzie. Among ... considered were: (a) MacKenzie cooperated with the ... s' investigation of MacKenzie and

others; (b) MacKenzie undertook remedial measures, including the implementation of training and an enhanced compliance program; (c) MacKenzie agreed to continue to cooperate with the United States in any ongoing investigation of the conduct of MacKenzie and its employees, agents, consultants, contractors, subcontractors, subsidiaries, and others; (d) MacKenzie's lack of prior history of citations or convictions involving similar conduct; and (e) the impact on MacKenzie, including collateral consequences to its employees, of a guilty plea or criminal conviction.

5.  MacKenzie shall continue to cooperate fully with the United States in any and all matters relating to fraud involving aircraft parts. At the United States' request, MacKenzie shall also cooperate fully with the United States, the United States Department of Defense, and other law enforcement authorities and agencies in any investigation of MacKenzie, or any of its present and former officers, directors, employees, agents, consultants, contractors, subcontractors, and subsidiaries, or any other party, in any and all matters relating fraud involving aircraft parts. MacKenzie agrees that its cooperation shall include, but is not limited to, the following:

a.  MacKenzie shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work-product doctrine with respect to its activities and those of its present and former directors, officers, employees, agents, consultants, contractors, subcontractors, and subsidiaries concerning all matters relating to fraud involving aircraft parts, about which MacKenzie has any knowledge or about which the United States may inquire. This obligation of truthful disclosure

includes the obligation of MacKenzie to provide to the United States, upon request, any document, record or other tangible evidence relating to such fraud about which the United States may inquire of MacKenzie.

b. Upon request of the United States, with respect to any issue relevant to its investigation of fraud involving aircraft parts, MacKenzie shall designate knowledgeable employees, agents or attorneys to provide to the United States the information and materials described in Paragraph 5(a) above, on MacKenzie's behalf. It is further understood that MacKenzie must at all times provide complete, truthful, and accurate information.

c. With respect to any issue relevant to the United States' investigation of fraud involving aircraft parts in connection with MacKenzie's operations, or any of its present or former subsidiaries or affiliates, MacKenzie shall use its best efforts to make available for interviews or testimony, as requested by the United States, present or former officers, directors, employees, agents and consultants of MacKenzie, as well as the officers, directors, employees, agents and consultants of contractors and subcontractors. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to MacKenzie's knowledge, may have material information regarding the matters under investigation.

d. With respect to any information, testimony, documents, records or other tangible evidence provided to the

United States pursuant to this Agreement, MacKenzie consents to any and all disclosures to other governmental authorities, including United States authorities, of such materials as the United States, in its sole discretion, shall deem appropriate.

### Payment of Monetary Penalty

6. The United States and MacKenzie agree that, in recognition of, among other considerations, MacKenzie's cooperation with the United States' investigation, its commitments in this Agreement, and the civil settlement agreement MacKenzie has entered into with the United States whereby MacKenzie has paid a settlement amount of $300,000, no monetary penalty will be imposed under this Agreement.

7. However, nothing in this Agreement shall be deemed an agreement by the United States that no penalty may be imposed in any future prosecution. In the event of a future prosecution, the United States is not precluded from arguing that the Court should impose a criminal fine, and the parties have no agreement as to the recommended fine range to be calculated pursuant to the Sentencing Guidelines.

### Conditional Release from Criminal Liability

8. In return for MacKenzie's full and truthful cooperation, and its compliance with the terms and conditions of this Agreement, the United States agrees, subject to paragraphs 12 through 15, below, not to use any information related to the conduct described in the Statement of Facts, attached hereto as Exhibit A, against MacKenzie or any of its wholly owned or controlled subsidiaries in any criminal or civil case, except: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making

a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. In addition, the United States agrees, except as provided herein, that it will not bring any criminal case against MacKenzie or any of its wholly-owned or controlled subsidiaries related to the conduct of present and former officers, directors, employees, agents, consultants, contractors and subcontractors, as described in the Statement of Facts, attached hereto as Exhibit A.

    a.    This Paragraph does not provide any protection against prosecution for any fraud involving aircraft parts or any other criminal violation, if any, that occur in the future by MacKenzie, or by any of its officers, directors, employees, agents, consultants, contractors, subcontractors, and subsidiaries, irrespective of whether disclosed by MacKenzie.

    b.    In addition, this Paragraph does not provide any protection against prosecution of any present or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of MacKenzie for any violations committed by them.

### Corporate Compliance Program

9. MacKenzie will enter into a three-year corporate compliance agreement with the United States Department of Defense Defense Logistics Agency, which requires MacKenzie to undertake various compliance obligations designed to ensure full compliance with all applicable laws, rules, and regulations governing government contracting. Among other provisions, the compliance agreement includes an independent Monitor that will monitor the

compliance of MacKenzie throughout the three-year term. The Defense Logistics Agency will monitor MacKenzie's compliance with the corporate compliance agreement and enforce any breaches in accordance with the remedies set forth in the corporate compliance agreement.

### Deferred Prosecution

10. In consideration of: (a) MacKenzie's past and future cooperation described in Paragraph 5 above; (b) MacKenzie's payment of a monetary civil settlement of $300,000; and (c) MacKenzie's corporate compliance agreement with the Defense Logistics Agency, the United States agrees that any prosecution of MacKenzie for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term of this Agreement.

11. The United States further agrees that if MacKenzie fully complies with all of its obligations under this Agreement, the United States will not continue the criminal prosecution against MacKenzie described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire. Within thirty (30) days prior to the Agreement's expiration, MacKenzie shall submit to the United States a written certification that MacKenzie is in compliance with this Agreement. Within thirty (30) days of the Agreement's expiration, the United States shall seek dismissal with prejudice of the Criminal Information filed against MacKenzie described in Paragraph 1.

### Breach of the Agreement

12. If, during the Term of this Agreement, the United States determines, in its sole discretion, that MacKenzie has (a) committed any felony under federal law subsequent to the signing

of this Agreement, (b) at any time provided deliberately false, incomplete, or misleading information, or (c) otherwise breached the Agreement, MacKenzie shall thereafter be subject to prosecution for any federal criminal violation of which the United States has knowledge, and the information and the facts described in the Statement of Facts, attached hereto as Exhibit A, may be pursued by the United States in the United States District Court for the Southern District of California or any other venue appropriate under law.  Any such prosecution may be premised on information provided by MacKenzie.  Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against MacKenzie notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one (1) year.  Thus, by signing this Agreement, MacKenzie agrees that the statute of limitations with respect to any prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one (1) year.

    13.  In the event that the United States determines that MacKenzie has breached this Agreement, the United States agrees to provide MacKenzie with written notice of such breach prior to instituting any prosecution resulting from such breach.  MacKenzie shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the United States in writing to explain the nature and circumstances of such breach, as well as the actions MacKenzie has taken to address and remediate the situation, which explanation the United States shall consider in determining whether to institute a prosecution.

14. In the event that the United States determines that MacKenzie has breached this Agreement: (a) all statements made by or on behalf of MacKenzie to the United States or to the Court, including the Statement of Facts attached hereto as Exhibit A, and any testimony given by MacKenzie before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, or any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against MacKenzie; and (b) MacKenzie shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of MacKenzie prior or subsequent to this Agreement, and any leads derived therefrom, should be suppressed. The decision whether conduct or statements of any individual will be imputed to MacKenzie for the purpose of determining whether MacKenzie has violated any provision of this Agreement shall be in the sole discretion of the United States.

15. MacKenzie acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if MacKenzie breaches this Agreement and this matter proceeds to judgment. MacKenzie further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

//

### Sale or Merger of MacKenzie

16. MacKenzie agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a stock or asset sale, merger or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

### Public Statements by MacKenzie

17. MacKenzie expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for MacKenzie make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by MacKenzie set forth above or the facts described in the attached Statement of Facts, attached hereto as Exhibit A. Any such contradictory statement shall, subject to cure rights of MacKenzie described below, constitute a breach of this Agreement and MacKenzie thereafter shall be subject to prosecution as set forth in Paragraphs 12-15 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to MacKenzie for the purpose of determining whether MacKenzie has breached this Agreement shall be at the sole discretion of the United States. If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the United States shall so notify MacKenzie, and MacKenzie may avoid a breach of this Agreement by publicly repudiating such statement(s) within

five (5) business days after notification. Consistent with the obligations of MacKenzie as set forth above, MacKenzie shall be permitted to raise defenses and to assert affirmative claims in civil and regulatory proceedings relating to the matters set forth in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former employee of MacKenzie in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on MacKenzie's behalf.

18. MacKenzie agrees that if it or any of its direct or indirect affiliates or subsidiaries issues a press release in connection with this Agreement, MacKenzie shall first consult the United States to determine whether (a) the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the United States and MacKenzie; and (b) the United States has no objection to the release.

### Limitations on Binding Effect of Agreement

19. This Agreement is binding on MacKenzie and the United States but specifically does not bind any other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the United States will bring MacKenzie's cooperation and compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by MacKenzie.

//

**Complete Agreement**

20. This Agreement sets forth all the terms of the agreement between MacKenzie and the United States. No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the United States, the attorneys for MacKenzie, and a duly authorized representative of MacKenzie.

Dated: _April 26,_____, 2011.

**AGREED:**

**FOR MACKENZIE AIRCRAFT PARTS, INC.:**

Date: _April 25, 2011_  By: _Toni MacKenzie_____

TONI MACKENZIE
President and Chief Executive Officer
MacKenzie Aircraft Parts, Inc.

Date: _4/25/11_  By: _____

MICHAEL PANCER, ESQ.
Counsel for
MacKenzie Aircraft Parts, Inc.

**FOR THE UNITED STATES OF AMERICA:**

SOUTHERN DISTRICT OF CALIFORNIA

LAURA E. DUFFY
United States Attorney

Date: _4/26/11_  By: _Faith Devine for Annalou Tirol_

ANNALOU TIROL
Assistant United States Attorney

- 12 -

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for MacKenzie Aircraft Parts, Inc. ("MacKenzie"). I understand the terms of this Agreement and voluntarily agree, on behalf of MacKenzie, to each of its terms. Before signing this Agreement, I consulted outside counsel for MacKenzie. Counsel fully advised me of MacKenzie's rights, of possible defenses, and of the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on MacKenzie's behalf, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the President and Chief Executive Officer of MacKenzie Aircraft Parts, Inc.

Date: _April 25_, 2011

By: _Toni MacKenzie_

TONI MACKENZIE
President and CEO
MacKenzie Aircraft Parts, Inc.

## CERTIFICATE OF COUNSEL

I am counsel for MacKenzie Aircraft Parts, Inc. ("MacKenzie") in the matter covered by this Agreement. In connection with such representation, I have examined relevant MacKenzie documents and have discussed the terms of this Agreement with MacKenzie representatives. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of MacKenzie has been duly authorized to enter into this Agreement on MacKenzie's behalf and that this Agreement has been duly and validly authorized, executed, and delivered on MacKenzie's behalf and is a valid and binding obligation of MacKenzie. Further, I have carefully reviewed the terms of this Agreement with Toni MacKenzie, President and Chief Executive Officer of the company. I have fully advised her of MacKenzie's rights, of possible defenses, and of the consequences of entering into this Agreement. To my knowledge, MacKenzie's decision to enter into this Agreement is an informed and voluntary one.

Date: 4/26/11 , 2011

By: _/s/ Michael Pancer_
MICHAEL PANCER, ESQ.
Counsel for
MacKenzie Aircraft Parts, Inc.

**ATTACHMENT A**

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement ("the Agreement") between the United States Attorney's Office for the Southern District of California (the "United States") and MacKenzie Aircraft Parts, Inc. ("MacKenzie"), and the parties hereby agree and stipulate that the following information is true and accurate. As set forth in Paragraph 2 of the Agreement, MacKenzie admits, accepts, and acknowledges that it is responsible for the acts of its officers, employees, and agents as set forth below.

1. MacKenzie Aircraft Parts, Inc. ("MacKenzie") is a California corporation located in Vista, California that specializes in sales of aircraft and helicopter parts. From 2004 to 2008, Joel Potter ("Potter") was employed by MacKenzie.

2. During the time of his employment, Potter was the MacKenzie employee primarily responsible for the sale of aircraft parts to Science Applications International Corporation ("SAIC"). These sales to SAIC involved "spot buys" where MacKenzie obtained and sold aircraft parts to SAIC, which had a contract with the United States Department of Defense ("DOD") to provide aircraft parts to the DOD when needed.

3. For certain aircraft parts, the contract between SAIC and the DOD required specified and approved manufacturers. The SAIC/DOD contract further required "new manufactured" parts for other aircraft parts under

the contract; surplus parts were not allowed. On behalf of MacKenzie, Potter submitted bids several times to provide aircraft parts to SAIC for this contract. Potter knew the requirements of the SAIC/DOD contract when he submitted bids, and when he obtained and sold the aircraft parts to SAIC.

4. Despite the contract requirements, Potter knowingly and with the intent to defraud sold thousands of non-compliant aircraft parts to SAIC on behalf of MacKenzie on numerous occasions in response to bids awarded by SAIC to MacKenzie.

5. Potter knew that these non-compliant aircraft parts included Critical Safety Items necessary for the safe operation of aircraft by the DOD, and that they were in and affecting interstate commerce.

6. Potter also knew that these non-compliant aircraft parts fraudulently sold to SAIC by Potter on behalf of MacKenzie included: (a) parts supplied by non-approved manufacturers; and (b) surplus parts.

7. In particular, Potter submitted a bid on behalf of MacKenzie to provide 408 bolts manufactured by a specified and approved supplier. Potter then fraudulently provided bolts from a non-approved manufacturer instead of supplying bolts from the specified and approved manufacturer.

8. Potter also knowingly and with the intent to defraud signed a purchase order on behalf of MacKenzie in the Southern District of California on or about April 26,

|   |   |
|---|---|
| 1 | 2006, falsely stating that the bolts would be manufactured by the approved supplier specified on the purchase order. Subsequently, on or about August 17, 2006, with Potter's knowledge, another MacKenzie employee signed a false Certificate of Conformance that certified the supplier conformed to the purchase order for the bolts. |
| 9. | In addition, MacKenzie does not dispute and agrees the Government can prove that: |
| a. | These bolts were defective, and ordered for installation and use on Sikorsky CH-53E helicopters operated by the DOD that were in wide, active use around the world, including war zones; |
| b. | The DOD considered these eight-inch bolts essential for the safe operation of the helicopters since they attach the tail rotor blades to the helicopters; |
| c. | The DOD discovered that the bolts were non-compliant only after the head of one bolt broke off when it was being installed manually by hand on a helicopter; and |
| d. | Subsequent testing and investigation by the DOD revealed that the heat treating and plating of the bolts was done improperly, and that the bolts had been installed on at least four more Sikorsky CH-53E helicopters in use by the DOD. |
| 10. | The parties agree that the United States paid at least $137,000 for the thousands of non-compliant aircraft |


1. 2006, falsely stating that the bolts would be manufactured by the approved supplier specified on the purchase order. Subsequently, on or about August 17, 2006, with Potter's knowledge, another MacKenzie employee signed a false Certificate of Conformance that certified the supplier conformed to the purchase order for the bolts.

9. In addition, MacKenzie does not dispute and agrees the Government can prove that:

   a. These bolts were defective, and ordered for installation and use on Sikorsky CH-53E helicopters operated by the DOD that were in wide, active use around the world, including war zones;

   b. The DOD considered these eight-inch bolts essential for the safe operation of the helicopters since they attach the tail rotor blades to the helicopters;

   c. The DOD discovered that the bolts were non-compliant only after the head of one bolt broke off when it was being installed manually by hand on a helicopter; and

   d. Subsequent testing and investigation by the DOD revealed that the heat treating and plating of the bolts was done improperly, and that the bolts had been installed on at least four more Sikorsky CH-53E helicopters in use by the DOD.

10. The parties agree that the United States paid at least $137,000 for the thousands of non-compliant aircraft

parts. The parties further agree that at the time of this Agreement the cost to the United States to rectify the actual and potential disruption caused by the fraud was at least $107,000.

11. The parties further agree that Potter's actions as described in this Statement of Facts were within the scope of Potter's employment with MacKenzie and were intended, at least in part, to benefit MacKenzie.